**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID FRANCK,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: _______________** |
| | ) | |
| **FERMI RESEARCH ALLIANCE,** | ) | |
| **LLC., d/b/a FERMI NATIONAL** | ) | |
| **ACCELERATOR LABORATORY** | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **DEFENDANT.** | ) | |

## COMPLAINT

Plaintiff, DAVID FRANCK, (hereinafter "Plaintiff" or "Mr. Franck"), by and through his undersigned counsel of record, complains against Defendant, Defendant Fermi Research Alliance, LLC, d/b/a Fermi National Accelerator Laboratory ("Defendant" or "Fermilab"), and in so doing alleges, upon information and belief, except as to allegations particularly pertaining to himself, which are based on personal knowledge, states as follows:

## INTRODUCTION AND NATURE OF THIS ACTION

This case is about a loyal, hardworking employee who devoted more than fifteen years of his career to Defendant. Throughout his employment, Plaintiff consistently met or exceeded Defendant's legitimate expectations, earned promotions, accepted increasing responsibilities, and developed specialized institutional knowledge that Defendant relied upon in its operations.

Plaintiff engaged in protected activity by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), requesting and utilizing protected leave under the FMLA, asserting rights related to his disability, and opposing Defendant's unlawful employment practices. Instead of complying with its legal obligations, Defendant subjected

Plaintiff to heightened scrutiny, increased hostility, disparate treatment, interference with his protected rights, and ultimately terminated his employment on or around October 11, 2024.

Accordingly, this is an action is brought by Plaintiff against Defendant, Fermi Research Alliance, LLC d/b/a Fermi National Accelerator Laboratory ("Defendant" or "Fermilab"), arising out of Defendant's unlawful discrimination, retaliation, interference with protected leave, and wrongful termination in violation of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, the Illinois Human Rights Act ("IHRA"), and the Family and Medical Leave Act ("FMLA").

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), 1658, 2201, and 2202. This action is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

2. This Court has supplemental jurisdiction over Plaintiff's claims arising under the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*, pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims and form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) and (c) because the unlawful employment practices were committed in this judicial district, Plaintiff was employed in this district, Plaintiff resides in this district, and Defendant conducts business, maintains employment records, and ratifies illegal conduct in this district adversely affecting Plaintiff.

## CONDITIONS PRECEDENT TO FILING SUIT

4. Plaintiff has fulfilled all conditions precedent to the institution of this action under

Title VII. Plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the last discriminatory act. **See Ex. A, EEOC Charge, Charge No. 440-2025-02602.**

5. Plaintiff's EEOC charge remains under investigation by the EEOC. Nevertheless, the EEOC issued a Right to Sue upon request. **See Ex. B., EEOC Right to Sue.**

6. Plaintiff has filed the present action within 90 days of receiving the EEOC Right to Sue.

7. Plaintiff's EEOC Charge was cross-filed with the Illinois Department of Human Rights and Plaintiff has timely notified the Department of Human Rights of the EEOC's determination and issuance of the Right to Sue.

8. Plaintiff's claims under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., do not require administrative exhaustion through the EEOC and are subject to the applicable statutory limitations period, including for willful violations.

9. To the extent Defendant contends that any administrative prerequisite applies to any portion of Plaintiff's claims, such prerequisites have been satisfied, waived, excused, or otherwise do not bar suit.

## **PARTIES**

### **A. Plaintiff**

10. Plaintiff, David Franck, is a citizen of the United States and a resident of Kane County, Illinois.

11. Plaintiff was employed by Defendant in a technical role supporting Defendant's operations at or associated with the Fermilab facility in the Northern District of Illinois. Plaintiff remained employed by Defendant until his unlawful, retaliatory termination in or around October

11, 2024.

**B. Defendant**

12. Defendant, Fermi Research Alliance, LLC, d/b/a Fermi National Accelerator Laboratory ("Fermilab"), is an entity with its principal office located at P.O. Box 500, Batavia, Illinois 60510-5011.

13. Defendant conducts substantial business within the State of Illinois, including throughout the Northern District of Illinois.

14. Defendant is authorized to do business in the Northern District of Illinois, and at all times material to this action, has engaged in an industry affecting interstate commerce. Defendant is an entity subject to suit under the ADEA, the ADA, Title VII, the IHRA and the FMLA. At all times material to this action, Defendant has employed fifteen (15) or more employees for each working day of twenty (20) or more calendar weeks and is an employer within the meaning of Title VII.

## COMMON ALLEGATIONS

15. Plaintiff is a 54-year-old male and resident of Illinois.

16. Plaintiff was employed by Defendant from approximately August 2009-October 11, 2024.

17. At all relevant times herein, Plaintiff's job title was "Operations Specialist", a role requiring specialized technical skills, substantial responsibility, and sustained performance in a demanding operational environment. However, Plaintiff held other job titles during his tenure with Defendant.

18. Prior to 2009, Plaintiff had been working at Defendant's Batavia, IL location through a temp agency from 2007-2009.

19. Throughout his employment, Plaintiff was a dedicated, competent, and well-respected employee who met or exceeded Defendant's legitimate business expectations.

20. In or around 2023, Plaintiff filed an EEOC charge of discrimination (440-2022-09329) *pro se*.

21. The charge was dismissed and a right to sue letter was issued on or around April 29, 2024.

22. The statute of limitations to file a case in court for the original charge filed in 2023 (440-2022-09329), per the EEOC right to sue letter, expired on or around July 28, 2024.

23. Plaintiff chose not to file a case associated with the initial charge filed in hopes that the unlawful conduct had changed and that he could continue his employment without further discrimination and/or retaliation.

24. Plaintiff's initial EEOC Charge of Discrimination (440-2022-09329), was based upon a continuing pattern of discrimination, harassment, retaliation, and disparate treatment by Defendant in violation of the ADA and Title VII. The charge included, among other things, allegations that Defendant denied Plaintiff advancement opportunities, denied training opportunities, treated similarly situated employees more favorably, and retaliated against Plaintiff after he engaged in protected activity.

25. However, shortly after the filing deadline associated with Plaintiff's initial EEOC charge expired in late July 2024, Defendant's discrimination, harassment, and retaliation against Plaintiff resumed.

26. At all relevant times herein, Plaintiff's management chain included Aleksandr "Sasha" Romanov, a manager with supervisory authority over Plaintiff's work assignments and work conditions, and Defendant's Human Resources personnel, including Chris Lawrence.

27. Throughout his tenure, Plaintiff was entrusted with significant operational responsibilities and performed work that required careful planning, compliance with Defendant's internal processes, and coordination with other personnel.

28. Despite over 15 years of employment with Defendant, Plaintiff did not have any notable disciplinary history or record.

29. In or around December 2023, Plaintiff applied for FMLA leave for his own serious medical condition.

30. For over seven (7) months, Plaintiff attempted to follow-up with HR and the third party administrator, MetLife, regarding his FMLA approval.

31. All the while, Plaintiff utilized his sick and/or vacation time to cover any FMLA related absences.

32. On or around July 30, 2024, Plaintiff was approved for FMLA-protected leave through Defendant's leave administrator, MetLife.

33. MetLife approved Plaintiff's request for intermittent FMLA leave effective July 30, 2024, through December 11, 2024. MetLife expressly denied leave for the period between December 12, 2023 and July 29, 2024.

34. Plaintiff took his first days of approved FMLA leave from in or around August 26 through August 30, 2024, during Defendant's designated "maintenance period."

35. During this period, Defendant did not permit Plaintiff to utilize accrued sick time unless the absence was designated as FMLA-protected leave and otherwise required Plaintiff to utilize accrued vacation time.

36. Plaintiff utilized his approved FMLA leave and FMLA-designated sick time to address symptoms related to his serious health condition.

37. Defendant knew that Plaintiff's leave was protected by the FMLA and that Plaintiff was entitled to take such leave without harassment, interference, or retaliation.

38. Despite Plaintiff's approved leave status, Defendant, through its Human Resources personnel and management, began scrutinizing Plaintiff's use of FMLA leave and questioned Plaintiff regarding his use of protected leave.

39. In particular, on or about September 3, 2024, Defendant's Human Resources representative, Chris Lawrence, questioned Plaintiff regarding his use of approved FMLA leave, asserted that information received from MetLife conflicted with Plaintiff's physician's certification, and directed Plaintiff to investigate and resolve those purported discrepancies despite the fact that Plaintiff's leave had already been approved by MetLife.

40. Around the same time, Plaintiff recalls having discussions with Chris Lawrence regarding reasonable accommodations and how to formalize the request.

41. Shortly thereafter, Chris Lawrence informed Plaintiff that he was no longer authorized to move his break time to the end of the day (as other similarly situated employees were permitted to do) or complete administrative assignments from home despite having authority and authorization to do so.

42. Chris Lawrence stated Plaintiff was not permitted the same work breaks that other hourly employees are allowed. Plaintiff was authorized to take 60 minutes of break time, while other employees similarly situated hourly employees were authorized over 90 minutes of break time.

43. During questioning by Chris Lawrence and Sandra Charles, Plaintiff informed Defendant that a similarly situated hourly employee, Craig Rogers, had allegedly taken excessive lunch breaks for many years. Plaintiff is informed and believes that Mr. Rogers was subsequently

removed from his position and placed into another position for which Plaintiff had previously applied. Plaintiff does not know whether Defendant formally disciplined Mr. Rogers.

44. Defendant's harassment and hostility signaled to Plaintiff that Defendant viewed the exercise of statutory leave rights as disloyal or punishable, rather than legally protected.

45. Notably, the harassment and hostile work environment described herein resumed around the same time that Plaintiff's initial statute of limitations from his 2023 EEOC charge of discrimination expired and when his FMLA request had been approved by Metlife.

46. Defendant also maintained a workplace culture that tolerated or excused misconduct by management while scrutinizing, disparaging, and punishing Plaintiff for protected activity and lawful conduct.

47. Prior to Plaintiff's request for FMLA leave, Defendant had authorized Plaintiff to work from home under a telework arrangement approved by Plaintiff's manager, Aleksandr "Sasha" Romanov, and Plaintiff performed work consistent with that authorization.

48. Plaintiff relied on Defendant's telework authorization and complied with Defendant's requirements in doing so.

49. Defendant later attempted to reframe the authorized telework arrangement and/or related work expectations as a justification for adverse action, despite Defendant's prior written approval.

50. Plaintiff further contends that his office space was intentionally made unsafe and uncomfortable by applying a password to prevent him from accessing HVAC controls for his workspace. The air quality in his workspace had been an issue for years.

51. Despite repeated complaints regarding the air quality, rodent infestations, and lighting exposure controls, of which a lab industrial hygienist acknowledged were problematic, management failed to move Plaintiff or otherwise remediate the environment.

52. In fact, Plaintiff requested his radiation exposure reports and to date, has not received requested copies.

53. During his employment, Plaintiff sought advancement and career-development opportunities and requested training that was relevant to his position and future advancement within Defendant's organization.

54. Plaintiff was routinely denied training opportunities that were provided to other Operations Specialists, causing Plaintiff's training matrix to lag behind those of similarly situated employees and limiting Plaintiff's ability to meaningfully compete for advancement opportunities.

55. Plaintiff sent an email to Chris Lawrence naming other employees who had the title of "operations specialist" and who were afforded training opportunities that Plaintiff was denied.

56. For example, in or around September 2023, Defendant approved two substantially younger employees to attend the FABTECH conference, a professional development and networking opportunity relevant to Plaintiff's operational role, while Plaintiff was not afforded the same opportunity.

57. Upon information and belief, substantially younger employees in comparable positions were invited or encouraged to attend professional development and training opportunities without being required to independently request attendance, while Plaintiff was excluded from those same opportunities.

58. Upon information and belief, Defendant promoted substantially younger employees with less experience and fewer years of service than Plaintiff and provided those

employees with special projects and other opportunities for professional advancement that were not provided to Plaintiff.

59. Despite Plaintiff's more than fifteen years of experience, specialized technical knowledge, history of promotions, and willingness to assume additional responsibilities, Defendant repeatedly denied Plaintiff meaningful opportunities for promotion and advancement.

60. On or about May 2, 2023, Plaintiff complained that Defendant had denied him management-related training that had been provided to numerous similarly situated Operations Specialists, despite Plaintiff's qualifications, experience, and interest in career advancement.

61. Upon information and belief, Defendant provided such training opportunities to other Operations Specialists while denying those same opportunities to Plaintiff, thereby limiting Plaintiff's ability to compete for advancement opportunities within the organization.

62. Defendant's refusal to consider Plaintiff for advancement occurred in a broader context of disparate treatment toward Plaintiff based on protected characteristics and/or protected activity.

63. Plaintiff also experienced disparate treatment in compensation and recognition, including in connection with Defendant's EPRA bonus program.

64. Defendant's EPRA bonus program was not limited to one category of employee and, on information and belief, extended to administrative and clerical personnel as well as technical personnel.

65. Plaintiff was treated less favorably in the awarding of EPRA bonuses and recognition than similarly situated employees outside Plaintiff's protected class and/or who had not engaged in protected activity.

66. Overall, Plaintiff contends that he was treated less favorably than similarly situated employees, including, but not limited to, Defendant's failure to provide adequate training, failure to assign Plaintiff a work partner for safety reasons while assigning partners to other employees, subjecting Plaintiff to unsafe working conditions, requiring Plaintiff to provide his own tools (many of which remain in Defendant's possession), and taking away Plaintiff's assigned work vehicle.

67. Defendant's stated reasons for Plaintiff's disparate treatment were inconsistent, shifting, and pretextual.

68. Plaintiff opposed unlawful conduct and/or participated in protected activity, including raising concerns about his treatment and/or pursuing legal protections.

69. After Plaintiff engaged in protected activity and exercised FMLA rights, Defendant escalated adverse actions against Plaintiff, including heightened scrutiny, hostility, and ultimately termination.

70. Defendant's adverse actions against Plaintiff (termination) were materially adverse and would dissuade a reasonable worker from exercising protected rights.

71. Defendant terminated Plaintiff's employment on or around October 11, 2024.

72. Upon information and belief, Defendant hired a less qualified, less experienced person under the age of 40 to perform substantially the same duties Plaintiff had performed prior to his termination.

73. Defendant's adverse actions were motivated, at least in part, by discriminatory animus and retaliatory intent, including retaliation for Plaintiff's use of approved FMLA leave and retaliation for previously filing an EEOC charge.

74. Defendant's conduct was intentional, willful, and carried out in reckless disregard for Plaintiff's rights under federal law.

75. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, financial hardship, loss of employment, loss of income and benefits, and damage to his professional reputation.

76. All allegations herein are pled in the alternative to the extent such an interpretation is necessitated for viable construction under applicable federal law.

## CAUSES OF ACTION

### COUNT I

### AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 et seq.

77. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

78. All conditions precedent to Count I have been satisfied; however, the EEOC is still conducting an investigation relating to Plaintiff's ADEA claim. Nevertheless, the EEOC issued the right to sue, while continuing the investigation.

79. Plaintiff was over the age of forty (40) at all relevant times herein and is therefore a member of the class protected by the ADEA.

80. At all relevant times, Plaintiff was qualified for his position and performed his job duties satisfactorily.

81. Defendant subjected Plaintiff to adverse employment actions, including denial of promotion opportunities, denial of advancement opportunities, disparate treatment, and termination.

82. Defendant treated substantially younger employees more favorably in terms of

promotional consideration, workplace opportunities, training opportunities, and/or continued employment.

83. Upon information and belief, Plaintiff was replaced by a less qualified, less experienced individual under the age of 40.

84. Defendant's actions were motivated by Plaintiff's age and were not supported by legitimate, non-discriminatory reasons.

85. To the extent Defendant asserts any legitimate reason for its actions, such reasons are pretextual.

86. Defendant's conduct violated the ADEA.

87. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, loss of income and benefits, and other damages recoverable under federal law.

**COUNT II**

**AGE DISCRIMINATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT, 775 ILCS 5/2-101 *et seq*.**

88. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

89. All conditions precedent to Count II have been satisfied.

90. Plaintiff was over the age of forty (40) at all relevant times herein and is therefore a member of the class protected by the IHRA and ADEA.

91. At all relevant times, Plaintiff was qualified for his position and performed his job duties satisfactorily.

92. Defendant subjected Plaintiff to adverse employment actions, including denial of promotion opportunities, denial of advancement opportunities, disparate treatment, and

termination.

93. Defendant treated substantially younger employees more favorably in terms of promotional consideration, workplace opportunities, training opportunities, and/or continued employment.

94. Upon information and belief, Plaintiff was replaced by a less qualified, less experienced individual under the age of 40.

95. Defendant's actions were motivated by Plaintiff's age and were not supported by legitimate, non-discriminatory reasons.

96. To the extent Defendant asserts any legitimate reason for its actions, such reasons are pretextual.

97. Defendant's conduct violated the IHRA and ADEA.

98. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, loss of income and benefits, and other damages recoverable under state and federal law.

**COUNT III**

**DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 et seq.**

99. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

100. All conditions precedent to Count III have been satisfied.

101. At all relevant times herein, Plaintiff suffered from a disability within the meaning of the Americans with Disabilities Act ("ADA"), including degenerative joint disease and related impairments.

102. Plaintiff was qualified for his position and met Defendant's legitimate expectations.

103. Defendant subjected Plaintiff to adverse employment actions, including denial of advancement opportunities, disparate treatment, increased scrutiny, and termination.

104. Defendant treated similarly situated employees who were not disabled, and/or who were not perceived as disabled, more favorably.

105. Defendant's actions were motivated by Plaintiff's disability and were not supported by legitimate, non-discriminatory reasons.

106. To the extent Defendant asserts any legitimate reason for its actions, such reasons are pretextual.

107. Defendant's conduct violated the ADA.

108. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, loss of income and benefits, and other damages recoverable under federal law.

**COUNT IV**

**DISABILITTY DISCRIMINATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT, 775 ILCS 5/2-101 *et seq*.**

109. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

110. All conditions precedent to Count IV have been satisfied.

111. Plaintiff, who suffers from a qualified disability under the IHRA and ADA, was an employee of Defendant pursuant to the IHRA, Title VII and the ADA from approximately 2009 through the date of his unlawful, retaliatory termination on or around October 11, 2024.

112. Defendant is an employer as defined by IHRA.

113. At all times relevant to this cause of action, Plaintiff was an "employee" of Defendant, and Defendant was Plaintiff's "employer" covered by and within the meaning of IHRA.

114. At all times relevant to this cause of action, Defendant had a duty under IHRA to prevent Plaintiff from being subject to discrimination and a hostile work environment on the basis of his qualified disability.

115. Defendant subjected Plaintiff to adverse employment actions, including denial of advancement opportunities, disparate treatment, increased scrutiny, and termination.

116. Defendant treated similarly situated employees who were not disabled, and/or who were not perceived as disabled, more favorably.

117. Defendant's actions were motivated by Plaintiff's disability and were not supported by legitimate, non-discriminatory reasons.

118. To the extent Defendant asserts any legitimate reason for its actions, such reasons are pretextual.

119. Defendant's conduct violated the IHRA and ADA.

120. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, loss of income and benefits, and other damages recoverable under state and federal law.

## COUNT V

## UNLAWFUL RETALIATION FOR EXERCISE OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq.

121. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

122. All conditions precedent to Count V have been satisfied.

123. Plaintiff engaged in statutorily protected activity, including filing a charge of discrimination with the Equal Employment Opportunity Commission in or around February 2023 and opposing conduct that Plaintiff reasonably believed to be unlawful.

124. Defendant knew of Plaintiff's protected activity.

125. On or about April 29, 2024, the EEOC issued Plaintiff a Notice of Right to Sue.

126. The deadline for Plaintiff to file suit based upon his prior EEOC charge expired in or around late July 2024.

127. Shortly after the expiration of the filing period and shortly after Plaintiff obtained approval for FMLA leave, Defendant subjected Plaintiff to increased scrutiny, hostility, investigation, suspension, and termination.

128. Defendant's stated reasons for its actions are false and pretextual.

129. Defendant's adverse actions were causally connected to Plaintiff's protected activity.

130. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer emotional distress, reputational harm, loss of income and benefits, and other damages recoverable under federal law.

**COUNT VI**

**UNLAWFUL RETALIATION FOR EXERCISE OF RIGHTS UNDER THE ILLINOIS HUMAN RIGHTS ACT, 775 ILCS 5/2-101, *et seq*.**

131. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

132. All conditions precedent to Count VI have been satisfied.

133. Plaintiff complained about, reported, opposed and protested Defendant's unlawful conduct in violation of the IHRA as alleged herein.

134. Defendant's unlawful conduct, as alleged herein, was so severe or pervasive that it affected the terms and conditions of Plaintiff's employment and subjectively and objectively created a hostile and abusive work environment, which a reasonable person would find hostile or

abusive, and which Plaintiff did find hostile and abusive.

135. Plaintiff engaged in statutorily protected activity, including filing a charge of discrimination with the Equal Employment Opportunity Commission in or around February 2023 and opposing conduct that Plaintiff reasonably believed to be unlawful.

136. Defendant knew of Plaintiff's protected activity.

137. On or about April 29, 2024, the EEOC issued Plaintiff a Notice of Right to Sue.

138. The deadline for Plaintiff to file suit based upon his prior EEOC/IDHR charge expired in or around late July 2024.

139. Shortly after the expiration of the filing period and shortly after Plaintiff obtained approval for FMLA leave, Defendant subjected Plaintiff to increased scrutiny, hostility, investigation, suspension, and termination.

140. Defendant's stated reasons for its actions are false and pretextual.

141. Defendant's adverse actions were causally connected to Plaintiff's protected activity.

142. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer emotional distress, reputational harm, loss of income and benefits, and other damages recoverable under state and federal law.

**COUNT VII**

**RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2615(a)(2)**

143. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

144. All conditions precedent to Count VII have been satisfied.

145. At all times relevant to this cause of action, Plaintiff was an "eligible employee"

within the meaning of the FMLA, and Defendant was an "employer" as defined under the FMLA.

146. Plaintiff exercised rights protected by the FMLA by requesting and taking approved FMLA leave.

147. In or around July 2024, Plaintiff requested intermittent FMLA leave for his serious health condition.

148. Plaintiff's request for FMLA leave was approved by Defendant's third-party leave administrator, MetLife, effective July 30, 2024.

149. Plaintiff began utilizing approved FMLA leave in or around late August 2024.

150. The FMLA prohibits employers from retaliating against employees for exercising rights protected by the statute and from using FMLA leave as a negative factor in employment decisions.

151. After Plaintiff began utilizing approved FMLA leave, Defendant, through its Human Resources personnel and management, subjected Plaintiff to increased scrutiny, hostility, questioning, and investigation regarding his use of protected leave.

152. Defendant, through Human Resources representative Chris Lawrence and other management personnel, challenged and scrutinized Plaintiff's use of approved FMLA leave and questioned information relating to Plaintiff's leave.

153. Defendant subsequently subjected Plaintiff to adverse employment actions, including heightened scrutiny, investigation, suspension, and termination.

154. Defendant's adverse actions were causally connected to Plaintiff's exercise of rights protected by the FMLA.

155. Defendant's stated reasons for its actions are false and pretextual.

156. Defendant's conduct was intentional and willful and carried out in reckless

disregard of Plaintiff's rights under the FMLA.

157. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, and other damages recoverable under the FMLA, including liquidated damages where applicable.

## COUNT VIII

## INTERFERENCE WITH RIGHTS GUARANTEED BY THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2615(a)(1)

158. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

159. All conditions precedent to Count VIII have been satisfied.

160. At all times relevant to this cause of action, Plaintiff was an "eligible employee" within the meaning of the FMLA, and Defendant was an "employer" as defined under the FMLA.

161. Plaintiff was entitled to the protections and benefits afforded by the FMLA, including the right to take approved FMLA leave for a serious health condition free from interference, restraint, or discouragement by Defendant.

162. Plaintiff requested and obtained approval for intermittent FMLA leave through Defendant's third-party leave administrator, MetLife, effective July 30, 2024.

163. After Plaintiff obtained approval for FMLA leave and began utilizing that leave, Defendant, through its Human Resources personnel and management, repeatedly questioned, challenged, and scrutinized Plaintiff's use of approved leave.

164. Defendant, including Human Resources representative Chris Lawrence, asserted that purported discrepancies existed regarding Plaintiff's approved leave, demanded that Plaintiff investigate and resolve such alleged discrepancies, and required Plaintiff to provide additional information regarding leave that had already been approved.

165. Defendant's conduct interfered with, restrained, and/or discouraged Plaintiff's exercise and enjoyment of rights protected by the FMLA.

166. Defendant's conduct would have discouraged a reasonable employee from exercising rights protected by the FMLA.

167. Defendant's actions violated the Family and Medical Leave Act, including 29 U.S.C. § 2615(a)(1).

168. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, and other damages recoverable under the FMLA, including liquidated damages where applicable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, DAVID FRANCK, requests the following relief:

i. Acceptance of jurisdiction of this cause;

ii. Reinstatement to Plaintiff's former position, or a substantially equivalent position, with restoration of full seniority, benefits, and all other rights and privileges of employment;

iii. Back Pay;

iv. Front Pay (if reinstatement is not feasible)

v. Damages sufficient to compensate Plaintiff for his injuries;

vi. Emotional Distress Damages (where available);

vii. Liquidated damages under the FMLA (where applicable);

viii. Punitive damages where available;

ix. Pre-judgment and post-judgment interest

x. Litigation costs and expenses

xi. Reasonable attorney's fees (where applicable); and

xii. Any and all other relief that this Honorable Court may deem just and equitable.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: July 16, 2026

Respectfully submitted,

DAVID FRANCK

/s/ Elizabeth C. Chavez

Elizabeth Chavez (#6323726)
Kathleen Chavez (#06255735)
Bret K. Pufahl (#6325814)
FOOTE CHAVEZ LAW, LLC
1541 E. Fabyan Parkway
Suite 101
Geneva, Illinois 60134
Telephone: (630) 232-7450
Facsimile: (630) 232-7452

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2026, I electronically filed the foregoing document with the clerk of court for the U. S. District Court, Northern District of Illinois, using the electronic case filing system of the court.

By: /s/Elizabeth C. Chavez
*One of Plaintiff's Attorney*